IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DORIS BENDY** | * |
| **Plaintiff,** | * |
| v. | * CASE NO. 1:10-cv-03385-CCB |
| **C.B. FLEET COMPANY, INC., et al.** | * |
| **d/b/a FLEET LABORATORIES, et al.** | |
| | * |
| **Defendants.** | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT WOODHOLME GASTROENTEROLOGY ASSOCIATES, P.A.'S
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

Woodholme Gastroenterology Associates, P.A., one of the defendants, by its undersigned counsel, submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Amended Complaint and in support states:

**I.      INTRODUCTION**

The present case arises from the injuries the plaintiff, Ms. Doris Bendy ("Ms. Bendy"), alleges she suffered after taking Phospho-Soda, a laxative manufactured by C.B. Fleet, Inc., in preparation for a colonoscopy.  Though the plaintiff styled her allegations of negligence against Woodholme as ones for negligent undertaking or negligent endorsement, they are in reality claims for medical negligence as the allegations arise from Woodholme's rendering of professional services to Ms. Bendy.

Ms. Bendy was scheduled for a colonoscopy to be performed at Woodholme Gastroenterology Associates, P.A. on June 1, 2005.  Ms. Bendy alleges that she was instructed by Woodholme to purchase two packages of C.B. Fleet's Phospho Soda and

use it the night before her colonoscopy.[1]  She did so, and the product "produced the desired results."  The colonoscopy proceeded without incident.

Within a week, Ms. Bendy developed persistent and significant nausea. Ultimately, she was diagnosed with kidney disease.  Plaintiff alleges that it was not until February 2008 when she learned her kidney disease may have been caused by her use of Fleet's product.  In December of 2008 the Food and Drug Administration issued a "Safety Advisory" regarding Fleet's Phospho Soda and its use as a bowel cleansing agent.  In response to the FDA Advisory, Fleet voluntarily recalled the product.  Plaintiff has now filed this Amended Complaint against C.B. Fleet Company, Inc., C.B. Fleet Holding Company, Inc., Weis Market, Inc. and Woodholme seeking damages for personal injury allegedly sustained as a result of her use of Fleet's Phospho Soda.[2]

Counts I through VI of the Amended Complaint do not pertain to Woodholme.[3] Counts VII and VIII are styled as Negligence counts and allege that Woodholme assumed and breached a duty of care to Ms. Bendy by instructing her to purchase Fleet's Phospho Soda and providing written instructions regarding the product's use.  The claim against Woodholme is by definition a claim for medical injury against a health care provider and is subject to the mandatory procedural requirements of the Health Claims Malpractice Act.  Plaintiff has not complied with those requirements.  Moreover, any claim against Woodholme for medical injury is time barred.  Claims against health care providers for medical injury must be filed, at the latest, within five years of the time the injury was committed.  Plaintiff alleges that she suffered injury within a week of her May 31, 2005

---

[1] Fleet's Phospho Soda is an over-the-counter saline laxative manufactured by C.B. Fleet Company sold for use as a bowel cleansing agent in preparation for colonoscopy.

[2] Pursuant to a Consent Motion, this Court granted defendant Weis Market, Inc.'s Motion for Summary Judgment.  There are no active claims against Weis Market, Inc.

[3] Plaintiff amended her original Complaint to remove any strict liability claim against Woodholme.

use of Phospho Soda, thereby requiring that any claim against Woodholme be filed, at the latest, by June 7, 2010.  The initial Complaint was not filed until September 27, 2010 and is barred by the applicable statute of limitations.

## II.     ARGUMENT

### A.     Legal Standard

Under Federal Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Therefore a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  Dismissal is appropriate when the non-moving party fails to state facts supporting each of the elements of their asserted claims. *See Iodice v. United States*, 289 F.3d 270, 281 (4th Cir., 2002).

### B.     The negligence claims against Woodholme are claims for medical injury requiring compliance with the Health Care Malpractice Claims Act.

The Amended Complaint asserts that Woodholme sent Ms. Bendy written materials prior to her colonoscopy procedure, instructing her to purchase two doses of Fleet's Phospho Soda Product.  Amended Complaint at ¶ 72.  Allegedly, the materials included directions on how to take the product.[4]  Amended Complaint at ¶73.

Count VII alleges that Woodholme assumed a duty of care to Ms. Bendy by providing its own written product directions and failed to exercise reasonable care by "failing to include adequate safety warnings" and by "effectively replacing the

---

[4] The Amended Complaint implicitly acknowledges that Woodholme had no knowledge regarding the potentially dangerous propensities of Fleet's Phospho Soda.  In paragraph 61, the Amended Complaint alleges that the Fleet defendants "falsely and fraudulently represented to consumers and the medical community that its Phospho Soda product had been tested and found to be safe and effective."  Ms. Bendy admits that the directions on the Phospho Soda packaging "seemed to be consistent with the instructions in the Woodholme materials."  Amended Complaint at ¶ 15.

3

manufacturer's product warnings and instructions." Amended Complaint at ¶¶ 74-78.  In Count VIII, the plaintiff alleges that Woodholme endorsed Fleet's product and represented that it would be safe and effective when they instructed Ms. Bendy to purchase Phospho Soda.  Amended Complaint at ¶¶ 82-84.

The allegations against Woodholme can only be deemed claims for medical injury against a health care provider.  Any such claim is subject to mandatory arbitration in Health Claims pursuant to MD. Code Ann., Cts. & Jud. Proc. §3-2A *et. seq*.  (Health Care Malpractice Claims Act) (the "Act").  The Act requires compliance with specific statutory requirements as a condition precedent to a Circuit Court action.  Instead of filing her claim against Woodholme in Health Claims, plaintiff filed suit in the Circuit Court for Anne Arundel County.  The action was subsequently removed by Fleet.  As Ms. Bendy failed to meet necessary condition precedent to institute and maintain a Circuit Court or District Court action, the Complaint should be dismissed as to Woodholme.

>    a. **The negligence claims against Woodholme are claims for "medical injury" arising from the actions of a health care provider.**

Maryland Code Ann., Courts and Judicial Proceedings §3-2A-02, provides:

> [a]ll claims, suits, and actions,... by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

The Health Care Malpractice Claims Statute (The "Act"), codified in § 3-2A requires that all such claims must be filed with the Health Claims Alternative Dispute Resolution Office ("Health Claims").  "Medical injury" is defined as an "injury arising or resulting from the rendering or failure to render health care."

In determining whether the claim is a "medical injury" under the purview of the Act, "the critical question is whether the claim is based on the rendering or failure to render health care and not on the label placed on the claim… ." *Brown v. Rabbitt*, 300 Md. 171, 175 (1984).   To be a medical injury under the Act, "the claim must involve the rendering of or failure to render professional services." *Swam v. Upper Chesapeake Medical Center, Inc.*, 397 Md. 528, 535 (2007).  In *Cannon v. McKen*, 296 Md. 27 (1983), the Court of Appeals explained the scope of the Health Claims Act as follows:

> the legislature intended to include in the scope of the Act only those claims for damages … originating from, in pertinent part, the giving of or failure to give health care.

*Cannon* 296 Md. at 37-38.

In Cannon, the Court detailed which claims were subject to the Act:

> [T]he Act covers …claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill.

*Id.* at 36-37.

 The plaintiff was scheduled for a colonoscopy.  Ms. Bendy alleges that Woodholme provided instructions regarding preparation for her colonoscopy, and that she purchased and used Phospho Soda based on those instructions.  She allegedly developed kidney disease.  Woodholme's involvement can only be characterized as arising out of "professional services," and a "medical injury."  The use of the Fleet product was a necessary corollary to the colonoscopy.  Bowel preparation and cleansing is part and parcel of the procedure.  The fact that Ms. Bendy received written materials from Woodholme and used the Fleet product prior to the actual colonoscopy itself does not take the bowel prep outside the realm of professional services.  Ms. Bendy was a

5

patient of Woodholme and her injuries arose from the use of Phospho Soda as a necessary preparation for her colonoscopy. Woodholme's actions in providing instructions to Ms. Bendy regarding the bowel prep needed for her colonoscopy required the exercise of professional judgment and was a necessary predicate to the colonoscopy itself. Any injury sustained is a "medical injury" and is subject to the Act.

### b. Woodholme is a "health care provider under the Health Care Claims Act."

Though the Act defines a "health care provider" as a doctor, nurse, hospital, etc., a professional association sued for the alleged negligence in the provision of professional services by its employees is subject to the provisions of the Act. *Group Health Association, Inc. v. Blumenthal*, 295 Md. 104 (1983). In *Group Health,* the plaintiffs sued a Health Maintenance Organization (HMO), in the U.S. District Court for the District of Maryland. The complaint alleged medical negligence against Group Health's employees but did not name any individual provider as a defendant.

In response to certified questions from the District Court, the Court of Appeals held that the claims against Group Health were subject to the Act, even though the Complaint did not name any health care providers as defendants. The Court of Appeals reasoned that the "aggregate of operative facts" giving rise to the action was the claimed negligence of Group Health's employed health care providers, and fell within the language in § 3-2A providing "all claims … by a person against a health care provider for medical injury" were subject to the Act. *Id.* at 112. The Court held that the broad language of the act encompassed claims for *respondeat superior* liability based upon the alleged negligence of employed providers. *Id.*

The "aggregate of operative facts" in Ms. Bendy's Amended Complaint is that Woodholme's health care providers directed her to take Phospho-Soda, and failed to warn her about the "potential health risks or adverse reactions" to Phospho-Soda. Amended Complaint at ¶ 12.  Any claim against Woodholme is for "medical injury" against a health care provider and is subject to the mandatory provisions of the Act.

      c.     **Ms. Bendy failed to submit her claim to the Health Claims Alternative Dispute Resolution Office, a mandatory pre-condition to filing suit.**

The Act requires that claims for "medical injury" against a health care provider be submitted to the HCADRO for mandatory arbitration.  The action must be dismissed when the litigants have not followed the required statutory procedure prior to filing the action.  *See Watts v. King*, 143 Md. App. 293 (2000) (*citing McCready Memorial Hospital v. Hausner,* 330 Md., 497 (1993) ("all claims must be submitted to mandatory arbitration as a pre-condition to any court action,").

Md. Code Ann., Cts. & Jud. Proc. §3-2A-06B (2004) allows a claimant to unilaterally waive arbitration of a claim, but only after the claimant has filed a Certificate of Qualified Expert as required under § 3-2A-04.  *See* Md. Code Ann., Cts. & Jud. Proc. §3-2A-06B (1) (2004).  So strong is the public policy underlying the statute that the Court of Appeals will, *sua sponte*, vacate judgment and order an action dismissed where litigants have not followed these statutory procedures. *Oxtoby v. McGowan*, 294 Md. 83, 91 (1982).  Where the claimant fails to follow the statutory precondition for a waiver of arbitration and nonetheless files suit, the Circuit Court must dismiss the action. *See Schwartz v. Lilly*, 53 Md. App. 318 (1982) (the only available remedy for non-compliance with the Act's requirements is dismissal).

7

When confronted with a claim against a health care provider, the trial court must determine if the plaintiff's factual allegations remove the claim from the Act's coverage. *Jewell v. Malamet*, 322 Md. 262, 267-269 (1991).  Where a plaintiff alleges that she was injured by a health care provider because of the rendering of medical treatment or services, the Act is implicated.  In order to remove a claim from the Act's coverage, the complaint must set forth facts showing that the claimed injury was not inflicted during the rendering of medical services, or that the injury resulted from conduct completely lacking in medical validity in relation to the medical care rendered.  *Id.* Further, to remove claims from the ambit of the Act, the allegations must be so far afield from malpractice claims that "in no way can it be read that the Legislature intended them to be within the Act."  *Id.* at 274.  In close cases where the trial court can not conclude with certainty that the allegations in the complaint are sufficient to remove the claims from the Act's coverage, "the court should not exercise jurisdiction over the claim until a malpractice claim is filed with the HCAO.  The HCAO initially will determine if the claim alleges a "medical injury" and is therefore subject to the Act."  *Goicochea v. Langworthy*, 345 Md. 719, 729 (1997).

Ms. Bendy, in filing her Complaint with the Circuit Court for Anne Arundel County, failed to first file her claim against Woodholme with Health Claims.  In sum, the allegations against Woodholme revolve around the directions given to Ms. Bendy regarding her necessary preparation for a medical procedure.  Such an allegation involves Woodholme's rendering of medical advice on how and what to do to prepare for a colonoscopy.  If there is doubt as to whether the plaintiff's allegations fall within the Act, the claims must first be filed in Health Claims.  As Ms. Bendy failed to comply with the

mandatory condition precedent for a unilateral waiver of arbitration, the statutory scheme precludes her ability to maintain an action in this Court. The Amended Complaint should be dismissed as to Woodholme.

### C. The present action alleges an injury arising out of the rendering of professional services by a health care provider and is barred by the five year statute of limitations.

As the negligence claims asserted against Woodholme arise out of the rendering of professional services, the applicable statute of limitations is provided under Md. Code Ann., Cts. & Jud. Proc. § 5-109, Actions Against Health Care Providers:

> An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider…shall be filed within the earlier of:
>
> (1) Five years of the time the injury was committed; or
>
> (2) Three years of the date the injury was discovered.

Section 5-109 applies to any claim seeking damages for injuries arising from actions of a health care provider. In *Group Health Association, Inc. v. Blumenthal* the Court of Appeals specified that all claims based on the rendering of or failure to render professional services by a health care provider were subject to § 5-109, even where the action did not name the health care provider as a party to the suit. The Court held "the application of § 5-109 is not limited to actions where a health care provider is a defendant." *Group Health*, 295 Md. at 113.

The Amended Complaint suggests that Ms. Bendy did not "discover" the cause of her injury until 2008. The "discovery rule" does not toll the statute as to claims against Woodholme. Section 5-109 requires that a claim be brought within the earlier of five years from the time the injury was committed or three years from the date the injury was discovered. The five years allowed under § 5-109 (1) serves as an outer limit to the time

9

when plaintiffs may sue. It provides that an action may not be brought more than five years after the "injury was committed." An "injury" is committed on the date that the allegedly negligent act was first coupled with harm. *See Hill v. Fitzgerald*, 304 Md. 689 (1985). The five year period runs without regard to whether the injury, or its cause, was discovered. *Id.*

In *Edmonds v. Cytology Services of Maryland, Inc.,* the Court of Special Appeals held that "the legislature specifically abolished the discovery rule when it enacted [§ 5-109]." *Edmonds v. Cytology Services of Maryland, Inc.* 111 Md. App. 233, 269 (1996). The Court stated:

> The purpose of the statute, readily evident from its terms, was to contain the long tail effect of the discovery rule in medical malpractice cases by restricting, in absolute terms, the amount of time which could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim related to that treatment.

*Id.* at 246.

Ms. Bendy alleges her injury occurred between May 31 and June 1, 2005, when she purchased and used Phospho Soda. Amended Complaint at ¶¶ 10-15. Ms. Bendy states that she first began to suffer a reaction "later in the week" after taking the Phospho Soda. Amended Complaint at ¶ 21. Ms. Bendy filed her Complaint on September 27, 2010, more than five years after the time of her injury. Any action against Woodholme is time barred.

### III. CONCLUSION

For the reasons stated herein the Amended Complaint should be dismissed as to Woodholme Gastroenterology Associates, P.A.

        Respectfully submitted,

_____
John R. Penhallegon (Bar #  010546)
Cornblatt, Bennett, Penhallegon & Roberson, P.A.
100 W. Pennsylvania Avenue, Suite 100
Towson, Maryland  21204
(410) 752-7600
Attorneys for Woodholme Gastroenterology
Associates, P.A.